# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**GEORGIO R. SCOTT**                                                                                  **PLAINTIFF**

v.                                                         **CIVIL ACTION NO. 2:19-cv-179-TBM-MTP**

**CARL PYLES** *and*
**FORREST COUNTY, MISSISSIPPI**                                              **DEFENDANTS**

### ORDER ADOPTING REPORT AND RECOMMENDATIONS AND
### GRANTING MOTION FOR SUMMARY JUDGMENT

Before the Court is Magistrate Judge Michael T. Parker's Report and Recommendation [66] regarding Officer Carl Pyles and Forrest County, Mississippi's Motion for Summary Judgment [61]. *Pro se* Plaintiff Georgio Scott filed suit pursuant to 42 U.S.C. § 1983, alleging that Officer Pyles, while acting on behalf of Forrest County, unlawfully arrested him without a warrant or probable cause and in an unreasonable manner. He also alleges that he filed several *pro se* motions in his underlying state criminal case that were never filed. Magistrate Judge Parker recommends that the Defendants' Motion for Summary Judgment [61] be granted, and Scott filed Objections. [68]; [70]; [72]; [73]. After reviewing Scott's Objections, the Court finds that summary judgment is warranted, as Officer Pyles is entitled to qualified immunity and Forrest County is not subject to Section 1983 liability on these claims.

### I. BACKGROUND AND PROCEDURAL HISTORY

Scott filed his Complaint [1] on November 13, 2019. Magistrate Judge Parker held a *Spears* hearing on April 1, 2021, where Scott clarified his claims.[1] At the *Spears* hearing, Scott alleged that he was wrongfully arrested by Officer Pyles. The record shows that Scott was first arrested by the

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

Forrest County Sheriff's Office for aggravated domestic violence on March 21, 2019. [61-2], pg. 1. The charge was changed to aggravated assault. *Id.* at 8. Scott was released on bond a week later. *Id.* at 7; [48], pg. 15. On May 23, 2019, Scott was arrested again, this time for possession of a weapon by a convicted felon. [61-2], pg. 9. Scott was released in less than twenty-four hours on May 24, 2019. *Id.* at 14. On the same day, though, the Hattiesburg Municipal Court of Forrest County, Mississippi, entered an "Order Revoking Bail." *Id.* at 17. The municipal court found probable cause that Scott had committed a new felony—possession of a weapon by a felon—while on bond for his aggravated assault charge and ordered that he be committed to the Forrest County Jail until his trial. *Id.*

On May 29, 2019, Scott alleges that Officer Carl Pyles arrived at Scott's home and rang his doorbell but did not identify himself as a police officer. Scott opened the door and "poked" his head out. Scott alleges that Officer Pyles grabbed his arm and tried to pull him out of the doorway. As Scott pulled back, he alleges that Officer Pyles wedged his foot in the door and forced his way into Scott's home. Somehow, Scott managed to get to his phone and call his lawyer. At that point, Scott alleges that Officer Pyles exited the home and spoke to Scott from his back fence. Officer Pyles showed Scott a picture on his phone indicating that Scott's bond had been revoked. Scott alleges that his lawyer told Scott to surrender himself to Officer Pyles, which Scott did.

Additionally, Scott alleges that he attempted to file several *pro se* motions in his underlying aggravated assault case in state court. He claims that his mail records show that the motions were sent to the circuit clerk. But, he alleges, his motions were never filed by the clerk.

## II. STANDARD OF REVIEW

It is well-settled that "[p]arties filing objections must specifically identify those findings objected to." *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987) (alteration in original)

(quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)). The Court must review any objected-to portions of a report and recommendation *de novo*. Such a review means that the Court will consider the record that has been developed before the Magistrate Judge and make its own determination on the basis of that record. *United States v. Raddatz*, 447 U.S. 667, 675, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980). The Court need not consider frivolous, conclusive, or general objections. *Johansson v. King*, No. 5:14-cv-96-DCB, 2015 WL 5089782, at *2 (S.D. Miss. Aug. 27, 2015) (citing *Battle*, 834 F.2d at 421). Additionally, "[m]erely reurging the allegations in the petition or attacking the underlying conviction is insufficient to receive *de novo* review." *Id.* When a *de novo* review is not warranted, the Court need only review the findings and recommendation and determine whether they are either clearly erroneous or contrary to law. *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989).

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment. *Casey Enterprises, Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted). The substantive law identifies which facts are material. *Liberty Lobby*, 477 U.S. at 248.

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477

U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The nonmoving party must then "go beyond the pleadings" and "set forth specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotations omitted).

Notably, the normal "summary judgment burden of proof is altered in the case of a qualified immunity defense." *Wolfe v. Meziere*, 566 F. App'x 353, 354 (5th Cir. 2014) (citing *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005); *Bazan ex rel. Bazan v. Hidalgo Cnty*, 246 F.3d 481, 489 (5th Cir. 2001)). Indeed, the burden shifts to the plaintiff to show that the defense is not available. *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016)). A plaintiff "must rebut the defense by establishing that the officer's allegedly wrongful conduct violated clearly established law." *Wolfe*, 566 F. App'x at 354 (citing *Michalik*, 422 F.3d at 262; *Bazan ex rel. Bazan*, 246 F.3d at 489). The plaintiff "cannot rest on conclusory allegations and assertions but must demonstrate genuine issues of material fact regarding the reasonableness of the officer's conduct." *Id*. But even when evaluating a qualified immunity defense, "all inferences are still drawn in the plaintiff's favor" at the summary judgment stage. *Tucker v. City of Shreveport*, 998 F.3d 165, 173 (5th Cir. 2021) (citing *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)).

### III. DISCUSSION

**1. False Arrest Claim Against Officer Pyles**

Scott's first claim alleges that Defendant Officer Pyles arrested him without a warrant or probable cause in violation of the Fourth Amendment. Officer Pyles argues that he had legal authority to arrest Scott based on the Hattiesburg Municipal Court of Forrest County's Order Revoking Bail. Magistrate Judge Parker found that Officer Pyles was entitled to qualified immunity on this claim. Scott makes several objections. First, he argues that even if "Officer Pyles may have

4

acted within his [qualified] immunity," Scott is still entitled to relief because his "constitutional and due process rights have been infringed upon." [68], pg. 3. Next, he argues that the Order Revoking Bail was fabricated. Finally, he argues that even if his bail was actually revoked, the revocation was invalid because he had a right to be present at a revocation hearing.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell*, 472 U.S. at 511. Courts use a two-step analysis to determine whether a defendant is entitled to qualified immunity. The Court must decide "(1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct." *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013) (quoting *Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011)). Courts have discretion to address either prong of the qualified immunity inquiry first. *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009). "[U]nder either prong, [the Court] may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Winzer v. Kaufman Cnty.*, 916 F.3d 464 (5th Cir. 2019) (citing *Tolan v. Cotton*, 572 U.S. 650, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014)). Instead, the Court "must view the evidence in the light most favorable to the opposing party." *Tolan*, 134 S. Ct. at 1866 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970)).

Scott argues that the doctrine of qualified immunity should not protect officials who violate a constitutional right. But the United States Supreme Court has determined that the doctrine is

necessary "to provide government officials with the ability 'reasonably [to] anticipate when their conduct may give rise to liability for damages.'" *Anderson v. Creighton*, 483 U.S. 635, 646, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987) (quoting *Davis v. Scherer*, 468 U.S. 183, 104 S. Ct. 3012, 82 L. Ed. 2d 139 (1984)). Moreover, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S. Ct. 2074, 179 L. Ed. 2d 1149 (2011)). This Court is bound to follow the Supreme Court's direction.

Under this framework, Officer Pyles is entitled to qualified immunity on this claim. "The Fourth Amendment requires that an arrest be supported by a properly issued arrest warrant or probable cause." *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001). "The Supreme Court has defined probable cause as the facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009) (internal quotations omitted) (quoting *Piazza v. Mayne*, 217 F.3d 239, 245–46 (5th Cir. 2000)). While on bond for an aggravated assault charge, Scott was arrested for possession of a weapon as a felon. [61-2], pg. 9. He was released the next day. *Id.* at 14. But, on May 24, 2019, the Hattiesburg Municipal Court of Forrest County entered its Order Revoking Bail, finding "Probable Cause to believe that [Scott] has committed a felony . . . while on bail." *Id.* at 17. The Order additionally commanded that Scott be "committed to the Forrest County Jail until such time as trial can be held." *Id.* at 17.  Thus, Officer Pyles had probable cause to arrest Scott.

Scott asserts in his Objections that the Order Revoking Bail was fabricated. He argues that "the Bond revocation do[es not] co[i]n[c]ide with actual witnesses, court reports or the computer system (Jail Tracker)." [68], pg. 3. For witnesses, Scott claims that "several bonding agencies" are "willing to testify." *Id.* at 6. But, beyond this statement in his Objections, Scott has not offered the names of these witnesses, their testimony, or how they could possibly evidence the fabrication of the revocation order. Nor has he shown how his arrest records are inconsistent with his bond revocation. The records demonstrate that Scott was arrested on May 29, 2019, by Officer Pyles, for possession of a weapon as a convicted felon—consistent with the Order revoking his bail for committing the offense of possession of a weapon as a convicted felon. [61-2], pg. 15. Scott argues that a Forrest County Detention Center Release Report "says that bond was entered and posted for $10,000" on May 24, 2019,[2] "which means that the bond revocation in question was never an actual document." [68], pg. 6. But this Release Report does not in any way support his contention that the Order Revoking Bail issued on the same day was "fabricated."[3]

"Although the pleadings filed by pro se parties are held to 'less stringent standards than formal pleadings drafted by lawyers,' pro se parties must still comply with the rules of procedure and make arguments capable of withstanding summary judgment." *Ogbodiegwu v. Wackenhut Corr. Corp.*, 202 F.3d 265, 1999 WL 1131884, at *2 (5th Cir. 1999) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)). Scott has not shown a material dispute of fact surrounding the authenticity of the Order Revoking Bail. *See Nat'l Ass'n of Gov't Emps. v. City Pub.*

---

[2] The Release Report dated May 24, 2019, actually indicates that Scott was released to Pugh Bonding with a $7,500 bond amount, not $10,000. [61-2], pg. 14.

[3] Scott also claims that because Officer Pyles showed Scott the bond revocation on his phone, "[Officer] Pyles was not oblivious to the fact that something was wrong." [68], pg. 6. He additionally indicates that his bondsman did not know about the revocation the day that Officer Pyles arrested Scott. But Scott does not explain how this demonstrates a factual question that the revocation was somehow fabricated.

*Serv. Bd. of San Antonio*, 40 F.3d 698, 713 (5th Cir. 1994) ("Conclusory allegations unsupported by specific facts, however, will not prevent an award of summary judgment.").

Scott further argues that the Order Revoking Bail was invalid because Scott believes that he should have been present with counsel when his bail was revoked. "[A]n official acting within the scope of his authority is absolutely immune from a suit for damages to the extent that the cause of action arises from his compliance with a facially valid judicial order issued by a court acting within its jurisdiction." *Mays v. Sudderth*, 97 F.3d 107, 113 (5th Cir. 1996) (finding a sheriff entitled to immunity when he arrested the plaintiff pursuant to a writ of attachment ordered by a state judge despite allegations that there was "no legal cause" for the writ). Whether or not there was some procedural or other error in the issuing of the Order, the Order was facially valid, and Officer Pyles was entitled to immunity in his reliance on it. *See Kugle v. Shields,* 62 F.3d 395, 1995 WL 450219, at *3 (5th Cir. 1995) (finding officers entitled to qualified immunity when they arrested the plaintiff based on a warrant that incorrectly identified her as the person to be arrested); *Est. of Manus v. Webster Cnty*, 2014 WL 1285946, at *5 (N.D. Miss. Mar. 31, 2014) (finding that officers were entitled to qualified immunity for an arrest based on an allegedly invalid order revoking bond because the plaintiff failed to show the defendants knew the order was invalid), *rev'd in part on other grounds*, 2014 WL 2207851 (N.D. Miss. May, 28, 2014).

Officer Pyles acted upon a facially valid court order finding probable cause to arrest Scott. Officer Pyles is entitled to qualified immunity. Scott's Objections to Magistrate Judge Parker's findings on this claim are overruled. Scott's false arrest claim against Officer Pyles is dismissed.

## 2. Unreasonable Arrest Claim Against Officer Pyles

Scott claims that Officer Pyles' actions during the arrest were unreasonable and violated the Fourth Amendment. Scott alleges that Officer Pyles, without identifying himself as a police officer, rang Scott's doorbell and grabbed him when Scott opened the door. Scott claims that he pulled himself back into the house, and Officer Pyles forced his way into the home after him. However, according to Scott, Officer Pyles then exited Scott's home, and only completed the arrest when Scott voluntarily surrendered to Officer Pyles on the advice of his lawyer.

Magistrate Judge Parker concluded that Officer Pyles was entitled to qualified immunity on this claim as well, finding that "[i]n light of the established law and considering the information available to Pyles, he could have reasonably believed that his arrest of Plaintiff and the manner of that arrest was lawful." [66], pg. 8. *See Kirkpatrick v. Butler*, 870 F.2d 276, 280 (5th Cir. 1989). Scott did not object to Magistrate Judge Parker's finding in this regard. The Court shall review the Report and Recommendations' findings relating to Scott's unreasonable arrest claim for clear error and being contrary to law.

The Fifth Circuit holds that a warrantless arrest at the front door of a home is consistent with the Fourth Amendment. *United States v. Mason*, 661 F.2d 45, 47 (5th Cir. 1981); *see also United States v. Carrion*, 809 F.2d 1120, 1128 (5th Cir. 1987) (finding a warrantless arrest in the front doorway of a hotel room was not unconstitutional). Moreover, "even if a person is standing slightly back from the door frame, [he] is considered to be in a public place" and "lacks any expectation of privacy." *Pulliam v. City of Horn Lake*, 32 F.3d 565, 1994 WL 442316, at *2 (5th Cir. 1994) (citing *Carrion*, 809 F.2d at 1128 n.9). And retreating into one's home cannot thwart an otherwise valid arrest. *United States v. Santana*, 427 U.S. 38, 42, 96 S. Ct. 2406, 49 L. Ed. 2d 300 (1976). Thus,

Magistrate Judge Parker's determination that Officer Pyles' actions during the arrest were reasonable in the light of clearly established law is without clear error and not contrary to law.[4] Officer Pyles is entitled to qualified immunity regarding Scott's unreasonable arrest claim, and this claim is dismissed.

### 3. *Respondeat Superior* Claim against Forrest County, Mississippi

Scott claims that Defendant Forrest County is also responsible for Officer Pyles' actions because he acted as an agent for the county. Magistrate Judge Parker found that any claim against Defendant Forrest County based on the theory of *respondeat superior* should be dismissed because Scott has failed to identify an official policy or custom that was the "moving force" behind any of Officer Pyles' alleged violations of the Fourth Amendment. Scott objects, arguing that failing to conduct a bond revocation hearing—allegedly in violation of the Mississippi Rules of Criminal Procedure—was the official policy of the county animating Pyles' actions.

"[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978). Instead, "[t]o state a claim for municipal liability under 42 U.S.C. § 1983, a plaintiff must allege '(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy (or custom).'" *Robinson v. Hunt Cnty.*, 921 F.3d 440, 447 (5th Cir. 2019) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)). "The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."

---

[4] For the reasons discussed, even under *de novo* review the Court would find that Officer Pyles is entitled to qualified immunity on this claim.

*Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) (emphasis in original).

A policy under *Monell* "may be officially promulgated by the governing body, by an official to which policy-making authority has been properly delegated, or by officials or employees of the municipality through a persistent, widespread practice that is so common and well settled as to constitute a custom that fairly represents municipal policy." *Robinson*, 921 F.3d at 449 (internal quotations omitted) (quoting *Culbertson v. Lykos*, 790 F.3d 608, 628 (5th Cir. 2015)). In other words, three methods exist to establish *Monell* liability: (1) "a plaintiff can show written policy statements, ordinances, or regulations"; (2) "a plaintiff can show a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy"; or (3) "even a single decision may constitute municipal policy in rare circumstances when the official or entity possessing final policymaking authority for an action performs the specific act that forms the basis of the § 1983 claim." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214-15 (5th Cir. 2019) (internal quotations omitted).

Scott has not alleged that Forrest County had a written policy statement, ordinance, or regulation denying a hearing. Nor has he alleged that it was the widespread practice of Forrest County to deny bond revocation hearings. Thus, by claiming that the failure to provide Scott a bond revocation hearing was an official policy triggering *Monell* liability, Scott necessarily asserts that the Hattiesburg municipal judge who revoked his bond acted as an official policymaker for Forrest County. But "a municipal judge acting in his or her judicial capacity to enforce state law does not act as a municipal official or lawmaker." *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992); *see also Krueger v. Reimer,* 66 F.3d 75, 77 (5th Cir. 1995) ("A local judge acting in his or her judicial

11

capacity is not considered a local government official whose actions are attributable to the county."); *Cunningham ex rel. Cunningham v. City of W. Point Miss.*, 380 F. App'x 419, 421 (5th Cir. 2010) (holding that a municipal judge's decision to deny bail was not a municipal policy for the purpose of determining a city's Section 1983 liability). Thus, Scott has failed to demonstrate an official policy or custom attributable to Forrest County. Scott's claim against Forrest County based on the actions of Officer Pyles must be dismissed.

**4. Claim Against Forrest County, Mississippi, Arising from the Litigation of Scott's State Criminal Case**

Finally, Scott raises a due process claim against Defendant Forrest County, Mississippi, stemming from the litigation of his aggravated assault charge in state court. Specifically, Scott claims that he submitted several *pro se* motions relating to that case that were never filed or ruled upon, resulting in the deprivation of a preliminary hearing, a speedy trial, discovery, and the ability to represent himself. Magistrate Judge Parker found that this claim should be dismissed because the actions of the circuit court could not fairly represent the official policy of the county. *See Krueger v. Reimer*, 66 F.3d 75, 77 (5th Cir. 1995). Scott objects, arguing that *Kruegar* does not apply because his claim arises from the *clerk's* alleged failure to file his motions while *Kruegar* held that the actions of a local *judge* acting in his judicial capacity cannot be attributed to the county.

But Scott's claim against Forrest County has an even more fundamental problem. "A party opposing . . . a summary judgment motion may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–57, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). Scott's evidence for this claim consists of (1) a page from his prison mail log

12

allegedly showing that mail was sent to Gwen Wilks, the Forrest County Circuit Clerk, on July 16, 2019, and August 12, 2019; and (2) three handwritten motions. [47-1], pp. 1-7. The motions—one titled "Motion to Dismiss," another "Motion for Own Recognizance Bond," and the other not titled at all but simply addressed to the "Honorable Judge Bob Helfredge [sic]"—do not have a state court case number written on them, nor are they dated.[5] Scott alleges that these motions were the mailings listed in the prison mail log.

Even taking all of the inferences in Scott's favor, Scott has—at best—only shown that his motions were put in the mail from the Forrest County Detention Center. He has not shown any evidence that anyone at the circuit clerk's office received the motions or failed to file his motions. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (emphasis deleted) (quoting *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988)). Scott has demonstrated neither of these elements. Scott has not met his burden to set forth specific facts showing the existence of a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Moreover, Scott's suit names Forrest County, not Circuit Clerk Gwen Wilks, as the defendant. To hold Forrest County liable, then, Scott must show (1) an official policy or custom, (2) of which a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy or custom. *Robinson v. Hunt Cnty.*, 921 F.3d 440, 447 (5th Cir. 2019) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

---

[5] The motions and the prison mail log all appear to have been notarized November 6, 2019, months after Scott claims to have sent copies of the motions to the circuit clerk.

13

Scott has not shown any evidence that the alleged failure of the clerk to file his three motions was the result of a written policy statement, ordinance, or regulation of Forrest County. Nor has he alleged that the county had a widespread practice of not filing *pro se* plaintiff's motions. Instead, it appears that Scott's objection asserts that the clerk was an official policymaker for Forrest County, such that the clerk's alleged decision not to file Scott's motions could fairly be considered the official policy of the county.

The problem for Scott is that, even if he could show that Circuit Clerk Gwen Wilks is a policymaker for Forrest County,[6] he has presented no evidence that she had actual or constructive notice of Scott's motions, or that any policy or decision was the moving force in Scott's motions not being filed. He has not shown that his motions were received by the Clerk's office, or—if they were received—who received them. "In the context of municipal liability under § 1983, 'rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee.'" *Mahoney v. City of Jackson*, No. CIV.A.3:07-cv-173-DPJ, 2008 WL 2990906, at *5 (S.D. Miss. July 25, 2008) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 405, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997)). Scott has not provided sufficient summary judgment evidence to support this claim against Forrest County. Scott's objection is

---

[6] Additionally, the circuit clerk may not be a final policymaker for Forrest County in this instance. State law determines who is a final policymaker. *Webb v. Town of Saint Joseph*, 925 F.3d 209, 215 (5th Cir. 2019) (citing *Advanced Tech. Bldg. Sols., L.L.C. v. City of Jackson*, 817 F.3d 163, 166 (5th Cir. 2016)). "Under Mississippi law, the judge is the ultimate authority for the supervision of the court in his jurisdiction," rather than the clerk. *Brooks v. George Cnty.*, 84 F.3d 157, 168 (5th Cir. 1996) (citing *In re Collins*, 524 So. 2d 553, 555 (Miss. 1987)). It follows that, in Mississippi, a clerk is not policymaker for the purpose of *Monell* liability. *See Brooks*, 84 F.3d at 168-69 (finding that a Mississippi circuit clerk could not be liable under Section 1983 for failing to transmit an order dismissing the plaintiff's criminal charges because the clerk was not the policymaker of the county circuit court system); *see also Borden v. Jackson Cnty., Miss.*, No. 1:11-cv-193-HSO, 2012 WL 3230429, at *3 (S.D. Miss. Aug. 6, 2012) (dismissing a Section 1983 claim against a Mississippi circuit clerk in his official capacity in part because the clerk is not a policymaker for the county circuit court system under Mississippi law).

overruled. His Section 1983 claim arising from his *pro se* motions in his state criminal case is dismissed.[7]

**5. Motions to Strike**

Scott filed four separate documents that the Court liberally construes as Objections to the Report and Recommendations. [68]; [70]; [72]; [73]. The Defendants filed a Motion [74] to Strike document number [70], which the Defendants assert is irrelevant to this case. The Defendants also filed two more Motions [75 & 76] to Strike documents numbered [72] and [73], arguing that these filings were procedurally improper. However, because the Court grants summary judgment in favor of the Defendants, the Court finds that the Motions to Strike are moot.

## IV. CONCLUSION

Officer Pyles is entitled to qualified immunity from Scott's claims. Scott has also failed to establish Section 1983 liability against Forrest County, Mississippi, for any of his claims. Summary judgment is granted to the Defendants.

IT IS THEREFORE ORDERED AND ADJUDGED that, for the reasons stated above, the Report and Recommendation [66] entered by United States Magistrate Judge Michael T. Parker on December 22, 2021, is ADOPTED as the opinion of this Court. Plaintiff Scott's Objections [68; 70; 72; 73] are OVERRULED.

IT IS FURTHER ORDERED that the Defendants' Motion for Summary Judgment [61] is GRANTED, and this cause is DISMISSED with prejudice.

---

[7] In his Objections to the Report and Recommendation, Scott seems to argue that the allegedly wrongful acts of the Defendants led to Scott's guilty plea and sentencing enhancement in *United States v. Scott*, 2:20-cr-17-TBM, a separate federal criminal case against Scott. [68], pg. 5. In response, the Defendants argue that Scott's claims are barred under *Heck v. Humphrey*, 512 U.S. 477, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) as a collateral attack on his conviction. [69]. Scott filed a reply disavowing any collateral attack on his federal conviction via this suit and asserting that his federal conviction is unrelated. [73]. Because the Court finds that Scott's claims should be dismissed on other grounds, the Court does not address the applicability of the *Heck* doctrine to this case.

IT IS FURTHER ORDERED that the Defendants' Motions to Strike [74; 75; 76] are DENIED as moot.

THIS, the 31st day of March, 2022.

                                                TAYLOR B. McNEEL
                                                UNITED STATES DISTRICT JUDGE